Eric B. Hull (#291167)
KERCSMAR & O'HARA PLLC
1149 N. Gower Street, Suite 216
Los Angeles, California 90038
Telephone: (310) 928-7885
Facsimile:  (480) 421-1002
ebh@KandOlaw.com

Sean J. O'Hara (pro hac vice to be filed)
KERCSMAR & O'HARA PLLC
8800 East Raintree Drive, Suite 310
Scottsdale, Arizona 85260
Telephone: (480)421-1001
Facsimile:  (480) 421-1002
sjo@KandOlaw.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ART RESEARCH AND TECHNOLOGY LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC, and YOUTUBE, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

ART Research and Technology LLC ("ART"), for its complaint against defendants Google, LLC ("Google") and YouTube, LLC ("YouTube") (together, "Defendants"), alleges as follows:

## **NATURE OF THE ACTION**

This is a civil action for patent infringement involving patents for online video clipping and online video stitching.

1

COMPLAINT

This action arises from Defendants' unlicensed and unauthorized use of ART's patented technology in Defendants' online video features YouTube Clips ("Clips") and YouTube Shorts ("Shorts"). The marketing, testing, importation, hosting, use, sale, offer for sale, and advertising of such features within the United States infringes upon ART's intellectual property rights. This illegal practice will continue unless, and until the Court puts an end to it.

ART brings this action to enjoin Defendants from continued infringement and to recover damages adequate to compensate for infringement, including but not limited to a reasonable royalty, and treble damages for Defendants' willful infringement.

## PARTIES

1. ART is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

2. Defendant Google is incorporated in Delaware and has its headquarters in Mountain View, California.

3. Defendant YouTube is incorporated in Delaware and has its headquarters in San Bruno, California.

## JURISDICTION

4. This is an action for infringement against Defendants brought under the Patent Act, 35 U.S.C. § 271 based upon Defendants' unauthorized commercial testing, use, importation, advertising, offer for sale and/or sale of its online video features YouTube Clips and YouTube Shorts, which infringe upon ART's patents: United States ("U.S.") Patent Numbers 9,451,001 ("'001 Patent") and 10,084,840 ("'840 Patent") (together, "ART Clipping Patents"); 10,609,442 ("'442 Patent") and 10,681,103 ("'103 Patent") (together, "ART Stitching Patents") (collectively, "ART Patents" or "Asserted Patents").

5. This Court has subject matter jurisdiction over ART's claims under 28 U.S.C. §§ 1331 and 1338(a) because this action is for patent infringement and arises under the patent laws of the United States, Title 35, Sections 271 *et seq.* of the United States Code.

6. As a result of this activity and Defendants' corporate residence in California, this Court has personal jurisdiction over Defendants.

7. Venue is proper in this District under 28 U.S.C §§ 1391 and 1400(b) because a substantial part of the events or omissions giving rise to ART's claims occurred in this District, Defendants maintain headquarters and have a significant presence in this District, and Defendants have advertised and derived revenue from the features in question within this District and have engaged in systematic and continuous business contact within this State.

8. Upon information and belief, a number of Defendants' current and former employees with information relevant to this case reside in the Northern District of California.

## DIVISIONAL ASSIGNMENT

9. This is an Intellectual Property Action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(c) and General Order No. 44.

## FACTS

### A. Plaintiff's Patented Technology

10. The use and importance of online video has grown tremendously over the last decade.

11. In 2016, ART launched a video social networking company and product called Kloojj® ("Kloojj"). Through Kloojj, ART set out to develop a platform enabling users to share virtual reference pointers defining video clips, including sharing pointers to video clips that were already on the web. ART also intended to add its stitching technology to Kloojj, allowing users to combine virtual clips into a video to be shared online. Kloojj's clipping and stitching technology incorporated annotations directing friends, followers, and other social media users to a specific portion of an existing video or to different videos to be stitched.

Kercsmar & O'Hara PLLC
1149 N. Gower Street, Suite 216
Los Angeles, California 90038
(310) 928-7885

12. As Kloojj's website explained:

> Kloojj gives users the power to bring social engagement to virtually any web page, web image or even inside web-based videos without the need to upload clips to your social networks. Clip, tag, save, share and find all your memorable moments while browsing the web.
>
> SAVE AND SHARE CLIPS INSIDE VIDEOS Create Kloojjs (clips) of all the most important moments inside web-based videos. Share Kloojjs by sharing to your friends and followers, by email, or by sharing Kloojjs directly to your favorite social networks. Discuss Kloojjs by adding and responding to comments.
>
> UNCLUTTER YOUR DIGITAL LIFE Organize everything without having to organize anything using Kloojj's unique multi-level tagging system. Finally, a tag that means something!! Create tags that work like your own custom filters to make it fast and easy to find any Kloojjs in seconds. Surf www.Kloojj.com to find and follow the users who create the Kloojjs that matter most.
>
> ANYTIME, ANYWHERE, ANY DEVICE Kloojj works with and syncs across all your devices. You can share video clips, web clips and web images while browsing websites or even using apps like Facebook, YouTube, Vimeo, and many others. Use KloojjCam to create Kloojjs while recording videos from your phone's camera. Kloojj will forever change how you engage with web-based content.

13. Moreover, since Kloojj's clipping and stitching technology would "stitch" and "clip" from existing videos, Koojj's technology improved upon existing technology, which required users to create and upload entirely new videos. Kloojj therefore improved video data storage capabilities, reducing the burden on server storage and network bandwidth (e.g., less servers needed).

14. The Kloojj product was advertised and promoted on social media websites. Videos demonstrating Kloojj's clipping functionalities are available at the following links:

https://www.youtube.com/@Kloojj/videos
https://www.youtube.com/watch?v=2Yc9kRbobDg
https://www.youtube.com/watch?v=CPJQO7Z8m48
https://www.youtube.com/watch?v=N_elO3sDqB8

15. Unfortunately, Kloojj is no longer operating, but its use of the ground-breaking technology was open and obvious to anybody with an Internet connection.

16. The developers of Kloojj, who continue to use their innovative technology in connection with their current business, secured a portfolio of patents and patent applications (the "Patent Portfolio") around the unique and novel technology.

17. The Patent Portfolio was assigned to ART.

18. At a high level, the Patent Portfolio relates to methods for annotating playable media files and systems for managing and sharing annotations between members of a social or business network.

19. The Patent Portfolio includes the four Asserted Patents identified above: U.S. Patent Numbers 9,451,001 ("'001 Patent") and 10,084,840 ("'840 Patent") (together, "ART Clipping Patents"); 10,609,442 ("'442 Patent") and 10,681,103 ("'103 Patent") (together, "ART Stitching Patents") (collectively, "ART Patents" or "Asserted Patents").

20. U.S. Patent Number 9,451,001 ("'001 Patent") was filed on January 31, 2014 and claims priority to U.S. Provisional Patent Application No. 61/759,219, filed on January 31, 2013.

21. The '001 Patent was granted on September 20, 2016, and was granted an extended term through April 14, 2034.

22. U.S. Patent Number 10,084,840 ("'840 Patent") was filed on September 19, 2016, as a continuation-in-part of the '001 Patent.

23. The '840 Patent was granted on September 25, 2018.

24. U.S. Patent Number 10,609,442 ("'442 Patent") was filed on April 5, 2017, as a continuation-in-part of the '840 Patent.

25. The '442 Patent was granted on March 31, 2020, and was granted an extended term through June 04, 2037.

26. U.S. Patent Number 10,681,103 ("'103 Patent") was filed on September 18, 2018, as a divisional of the '840 Patent.

27. The '103 Patent was granted on June 9, 2020.

28. ART's founders are the listed inventors on the ART Patents. The ART Patents identified herein relate to methods for annotating playable media files and systems for managing and sharing annotations between members of a social network.

29. Before the development of the Kloojj product, video sharing procedures were lacking in important ways. Specifically, users who wanted to create and share clips of existing videos, or Playable Media Files, would create each clip as a new Playable Media File, burdening storage and network resources. Likewise, a user who wanted to stitch clips into a single composite video or Playable Media File would still have to separate each clip into its own file to be stitched. In other words, users were unable to work off the same file, or clip and stitch from the original Playable Media File.

30. The technology protected by the ART Patent Portfolio provides significant advantages to previous video sharing methods by providing, *inter alia*: the ability to create short-form videos on social media platforms via (1) clipping features which involve hosting short-form videos (created from already existing longer videos) virtually, without taking up valuable gigabytes of storage space separate and apart from the original video (e.g., virtual clipping), and (2) stitching features which involve blending or "stitching" multiple virtual clips together.

31. The claims of the ART Patent Portfolio are directed to technological improvements that mitigate burdens in computer and server-burden functionality when applied to online video creation and sharing, and address failings that are unique to online video platform and data storage networked environments. The patents of the ART Patent Portfolio disclose that the technology relates to computer-specific improvements, viz. embedding annotations (e.g., virtual pointers/bookmarks) in a "Playable Media File" such as, for example, "an audio file, a video file, an audiovisual file, slide show, AVI file, MP3 file, MP4 file, WMA file, WAV file, Flash, MPEG file"; "embed the content as an annotation at the location within the playable media file"; create a table of contents of annotations that is then "embedded in the Playable Media File"; "receive a request to initiate a discussion thread at a location within the playable media file"; "generate an

embedded discussion thread at a location within the playable media file"; "provid[ing] the ability for each user having access to the Playable Media File stored on data storage library or (or those having the correct permissions) to edit the Playable Media File by adding annotations at various locations within the file" itself, among other technology specific improvements.

32. The '001 Patent solution improves computer functionality over prior video platform approaches because it allows multiple users to edit or clip existing Playable Media Files (e.g., video) within the Playable Media Files. Annotations (e.g., virtual pointers/bookmarks of chosen clips of existing Playable Media Files in a social network), are embedded at particular locations in the Playable Media Files themselves. User discussion threads are likewise embedded. In addition to allowing users to collaborate in the editing of Playable Media Files, this '001 Patent Solution and feature helps unburden network and bandwidth resources by embedding the annotation/virtual pointer in the already existing Playable Media File, rather than creating an entirely new Playable Media File of the desired clip, thereby improving computer functionality.

33. The method claims of the '001 patent save user's time, computer resources, and network bandwidth over prior approaches. The independent claim 1 of the '001 Patent recites:

> A method to annotate Playable Media Files in a social network having a plurality of members, comprising: receiving by a member of said social network a Playable Media File; creating by said member of said social network an annotation relating to said Playable Media File; providing said annotation by said member of said social network to a network server; providing a data profile by said member of said social network to said network server, wherein said data profile comprises a location in said Playable Media File where said annotation should be embedded; embedding by said network server said annotation in the Playable Media File at said location; determining by said network server if said annotation is a first annotation submitted for said Playable media File; if said annotation is not a first annotation submitted

for said Playable Media File, encoding said data profile in a previously-created table of contents for said Playable Media File; if said annotation is a first annotation submitted for said Playable Media File: creating a table of contents by said network server for said Playable Media File; encoding by said network server said data profile in said table of contents; wherein said Playable Media File is selected from the group consisting of an audio file, a video file, an audiovisual file, slide show, AVI file, MP3 file, MP4 file, WMA file, WAV file, Flash, MPEG file.

34. A copy of the '001 Patent is attached as **Exhibit 1**.

35. The '840 Patent solution improves computer functionality over prior video platform approaches because it allows annotations to be visible at a location in a Playable Media File, encoding the annotation in a file different from the file encoding the Playable Media File. The independent claim 1 of the '840 Patent recites:

A method to create and save an annotation associated with a Playable Media File, comprising: receiving a Playable Media File; creating an annotation relating to said Playable Media File; providing said annotation to a network server; providing a data profile to said network server, wherein said data profile comprises a location in said Playable Media File where said annotation should be made visible; determining by said network server if said annotation is a first annotation submitted for said Playable media File; if said annotation is not a first annotation submitted for said Playable Media File, encoding said data profile in a previously-created table of contents for said Playable Media File; if said annotation is a first annotation submitted for said Playable Media File: creating a table of contents by said network server for said Playable Media File; and encoding by said network server said data profile in said table of contents; wherein said Playable Media File is selected from the group consisting of an audio file, a video file, an audiovisual file, slide show, AVI file, MP3 file, MP4 file, WMA file, WAV file, Flash, and MPEG file.

36. A copy of the '840 Patent is attached as **Exhibit 2**.

37. The '442 Patent solution improves computer functionality over prior video platform approaches because it allows a large number of users to interact with a visible annotation indicator to display a list of graphical elements (e.g., annotations) of an existing Playable Media File. This represents an improvement in the graphical user interface (GUI) of a computing device in displaying content encoded by the Playable Media File, displaying a plurality of clip indicators each associated with a corresponding virtual clip of the plurality of virtual clips.

38. The independent claim 1 of the '442 Patent recites:

A method for displaying information associated with a Playable Media File, comprising: obtaining stored data describing the information, the stored data comprising a storage location of the playable media file and a plurality of virtual clips each associated with the playable media file and including a first data element identifying a first time within the playable media file at which a corresponding virtual clip begins, and a second data element identifying a first user profile associated with creating the corresponding virtual clip; accessing the playable media file at the storage location; causing a graphical user interface (GUI) to be displayed on a computing device of a user, wherein said GUI enables the user to generate user inputs by interacting with the GUI, and the GUI comprises: a display window for displaying content encoded by the playable media file; a first interactable graphical object, wherein the first interactable graphical object overlays a first portion of the display window and displays a timeline representing a duration of the playable media file and a plurality of clip indicators each associated with a corresponding virtual clip of the plurality of virtual clips, each clip indicator appearing on the timeline at a display position corresponding to the first time identified by the first data element of the corresponding virtual clip; and a second interactable graphical object, wherein the second interactable graphical object overlays a second portion of the display window, is configured to display up to a first number of graphic elements each associated with a corresponding virtual clip of the plurality of virtual

clips, and is initially not displayed in the GUI; receiving a first user input indicating a first interaction of the user with a first display position on the timeline; determining a selected time within the playable media file that corresponds to the first display position; identifying, as a plurality of displayable virtual clips: a first virtual clip of the plurality of virtual clips, the corresponding first time of the first virtual clip being the closest, of the plurality of virtual clips, to the selected time; and one or more of the virtual clips wherein the corresponding first time precedes and is approximate to the first time of the first virtual clip, and one or more of the virtual clips wherein the corresponding first time is subsequent and approximate to the first time of the first virtual clip, such that at most the first number of the plurality of virtual clips are selected as the plurality of displayable virtual clips; and updating the user interface on the computing device to display a list of the plurality of displayable virtual clips in the second interactable graphical object.

39. A copy of the '442 Patent is attached as **Exhibit 3**.

40. The '103 Patent solution improves computer functionality over prior video platform approaches because it stitches and blends virtual clips based on annotations of a Playable Media File into a composite virtual clip. The independent claim 1 of the '103 Patent recites:

A method to make a composite virtual clip, comprising: selecting (N) saved virtual clips and an order of presentation for each virtual clip; initially setting (M)=1; configuring a (M)th pointer to indicate a storage location for a (M)th saved virtual clip, wherein a (M)th virtual clip comprises a (M)th content from one or more designated sources and (M) is greater than or equal to 1 and less than or equal to (N); saving said (M)th pointer; determining if (M) equals (N); when (M) is less than (N), setting (M) equal to (M)+1; and repeating said configuring, saving, and determining until (M) equals (N).

41. A copy of the '103 Patent is attached as **Exhibit 4**.

42. The techniques and technology described in the Asserted Patents were not conventional and not well-understood at the time they were invented.

**B. Defendants' Infringement of the Asserted Patents**

43. Google began as a search engine in 1998 and has developed into a global conglomerate whose parent company has grown to one of the five largest businesses in the world based on market capitalization.[1]

44. YouTube began as an online video sharing platform in 2005 and has grown to be the largest business in the world in that category.[2]

45. On or around October 9, 2006, Google purchased YouTube for $1.65 billion, combining two now-dominant forces in the online technology industry.[3]

46. Now, Google and YouTube stand as the two most visited websites in the United States, combining for over sixty billion website visits per month—of which YouTube represented 23.69 billion visits in March 2024.[4]

47. Upon information and belief, with its substantial site traffic, YouTube generates a considerable amount of advertisement revenue with its platform through normally uploaded videos, the YouTube "Clips" feature, and the YouTube "Shorts" feature which launched in or around September 2020.

48. Upon information and belief, Shorts are YouTube's version of an engagement-driven business model which provides users with short-form videos created by content creators.

---

[1] https://finance.yahoo.com/news/20-largest-companies-world-market-163149862.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAN3QKYkM4XHNiSg5FipAGhdFWSYxtoCvcqzxNWfmmqqGFMGeKyMvmoMvN4f9_MHo0n9AnPBcob-C-6izLOXSuonE838fHU_WLfomTgNdyr2r0zU-SWddDDFjpBTiB5WfZvBXx5CbsQBNtcMaHMTzgggvZdiY5QI64rES5PUO4DWB
[2] *Id.*
[3] https://www.sec.gov/Archives/edgar/data/1288776/000119312506206884/dex991.htm.
[4] https://www.semrush.com/blog/most-visited-websites/

11
COMPLAINT

49. Upon information and belief, Clips are another version of short-form video content on YouTube whereby five-to-sixty second portions of a long-form YouTube video are shown to consumers.

50. Upon information and belief, across platforms, short-form videos are the most popular among Americans; in 2022, 66% of American social media consumers reported that short-form videos are the most engaging type of social media content.[5]

51. Upon information and belief, YouTube generated over $29 billion in advertisement revenue in 2022. This figure was generated before YouTube added advertisements to its Shorts videos.

52. Not surprisingly, revenue increased once YouTube added advertisements to Shorts videos. Upon information and belief, YouTube generated over $31.5 billion in 2023.

53. Upon information and belief, Google also derives substantial revenue from Shorts and Clips in its flagship Search product, often featuring Shorts and Clips near the top of search results.

54. Upon information and belief, Defendants Google and YouTube have directly infringed and induced infringement of the Asserted Patents through their YouTube Shorts and Clips products.

55. Upon information and belief, Defendants' Shorts and Clips products also infringe and/or induce Defendants' users to infringe at least Claim 1 of the '001 Patent.

56. Upon information and belief, Defendants' Shorts and Clips products also infringe and/or induce Defendants' users to infringe at least Claim 1 of the '840 Patent.

57. Upon information and belief, Defendants' Shorts product infringes and/or induces Defendants' users to infringe at least Claim 1 of the '442 Patent.

58. Upon information and belief, Defendants' Shorts product infringes and/or induces Defendants' users to infringe at least Claim 1 of the '103 Patent.

---

[5] https://blog.hubspot.com/marketing/how-video-consumption-is-changing

12

COMPLAINT

### i. Defendants' Infringing Clips Feature

59. Upon information and belief, YouTube Clips offers users the ability to create short-form videos complete with music, audio, and video. These videos are created by a user who takes a portion of a longer-form video, presents a five-to-sixty second clip of the video, and promotes more attention to the longer-form video on the user's profile. Additionally, users may annotate and edit the clipped short-form video. The Clips feature is available to all registered YouTube users.

60. In early 2021, when the Clips function released, YouTube touted it as a "new way for you and your fans to share favorite moments from your videos and live streams." Additionally, YouTube notes that "Clips will have their own sharable links, but they don't create new videos – they're only pointers to existing videos or streams." Lastly, "[a]ll metrics like views, watch time and ad revenue will be attributed to your original video."[6]

61. Though Clips is a feature available on YouTube's website, Google answers users' questions about the abilities and use of the function.[7]

62. Google Support describes how users create Clips[8]:
    a. Sign in to YouTube.
    b. Go to a video you want to clip.
    c. Select **Menu** ⋮ > **Clip** ✂.
    d. Add a title for your Clip (max 140 characters).
    e. Select the section of the video you'd like to clip. You can increase (maximum of 60 seconds) or decrease (minimum of 5 seconds) the length of your selection by dragging the slider.
    f. Click **SHARE CLIP.**
    g. Choose an option for sharing the clip:
        i. **Embed:** You can embed the video in a website.
        ii. **Social networks:** You can share your Clip to a social network like Facebook or Twitter.
        iii. **Copy the link:** You can copy a link to your Clip to paste somewhere else.
        iv. **Email:** You can share your Clip using the default email software on your computer.

---

[6] https://www.youtube.com/watch?v=A63imEmP_-I.
[7] https://support.google.com/youtube/answer/10332730?hl=en#:~:text=From%20the%20left%20Menu%2C%20click%20Content.,hide%20and%20report%20your%20Clips.
[8] *Id.*

13
COMPLAINT

63. By allowing multiple users to edit or clip existing Playable Media Files (e.g., video) within the Playable Media Files using annotations (e.g., virtual pointers/bookmarks of chosen clips of existing Playable Media Files in a social network), YouTube Clips infringes and/or induces infringement of, at least, the '001 Patent.

64. A claim chart demonstrating how Defendants practice and/or induce users to practice the techniques and technology embodied and claimed by the '001 Patent is included in the attached **Exhibit 5**.

65. Upon information and belief, the Clips feature also infringes and/or induces infringement of ART's '840 Patent.

66. A claim chart demonstrating how Defendants practice and/or induce users to practice the techniques and technology embodied and claimed by the '840 Patent is included in the attached **Exhibit 6**.

### ii. Defendants' Infringing Shorts Feature

67. Upon information and belief, YouTube Shorts offers users the ability to create short-form videos complete with music, audio, and video. Users create these videos from one or more virtual clips, which can be "stitched" together to create one, short-form playable media file up to sixty seconds long.

68. Upon information and belief, when YouTube Shorts was released in the United States in spring 2021, it became immediately popular (Shorts generated 6.5 billion daily views in March 2021 alone[9]).

69. Google Support provides the steps to create a Short: users may (1) record a video in the YouTube Studio, (2) use a previously recorded media file stored in the user's device, or (3) "Remix" a video from the Shorts watch page, allowing users to create a Short from another user's Short.[10]

70. Shorts also allows users to "stitch" the videos together: "If you select less than 60 seconds of your video to edit into a Short, you can record more video segments up to

---

[9] https://variety.com/2021/digital/news/youtube-shorts-global-launch-1235018403/
[10] https://support.google.com/youtube/answer/10059070?hl=en#zippy=%2Chow-do-i-create-shorts

60 seconds. For example, you may select 45 seconds of a long-form video you uploaded and then record 15 seconds of video with the Shorts camera."[11]

71. By allowing multiple users to edit or clip existing Playable Media Files (e.g., video) within the Playable Media Files using annotations (e.g., virtual pointers/bookmarks of chosen clips of existing Playable Media Files in a social network) and combine or stitch those clips together into a composite video, YouTube Shorts infringes and/or induces infringement of, at least, the '442 Patent.

72. A claim chart demonstrating how Defendants practice and/or induce users to practice the techniques and technology embodied and claimed by the '442 Patent is included in the attached **Exhibit 7**.

73. Upon information and belief, the Shorts feature also infringes and/or induces infringement of ART's '103 Patent.

74. A claim chart demonstrating how Defendants practice and/or induce users to practice the techniques and technology embodied and claimed by the '103 Patent is included in the attached **Exhibit 8**.

### iii. Defendants' Infringement Is Willful

75. Upon information and belief, Defendants were fully aware of ART's patented virtual clipping and stitching technologies and techniques prior to offering the infringing YouTube Clips and Shorts features discussed above.

76. Indeed, ART's patented technology is still showcased in tutorial videos for anyone to see on YouTube.com.

77. Additionally, ART's Patents are public and there is little doubt that Alphabet (the parent company of both YouTube and Google), one of the largest companies in the world, was not aware of the ART Patents prior to offering its virtual video clipping and stitching features described above.

---

[11] https://support.google.com/youtube/answer/12836917?hl=en&ref_topic=10343432&sjid=9273298013535806270-NC&co=GENIE.Platform%3DiOS&oco=0

78. In addition to having constructive notice of ART's patented technologies at least as early as September 20, 2016 (the '001 Patent's grant date and well before offering their virtual clipping and stitching features), Google received actual formal notice of its infringement of the ART Clipping Patents upon receipt of a letter sent January 4, 2023 (acknowledged by an email from Google's in-house counsel on January 17, 2023) and actual formal notice of its infringement on the ART Stitching Patents on August 22, 2023.

79. Defendants' infringement continues nevertheless.

### COUNT ONE: INFRINGEMENT OF THE '001 PATENT

80. ART incorporates by reference the previous allegations in the complaint.

81. The '001 Patent is valid and enforceable.

82. The '001 Patent has been validly assigned to ART.

83. Defendants have, without authority, consent, right, or license, and in direct infringement of the '001 Patent, made, used, offered for sale, and/or sold apparatus protected by the '001 Patent.

84. Defendants have actual notice of the '001 Patent. This notice was provided on each and every of Defendants products that embody the patented invention. Despite having notice of the Patent, Defendants continue to infringe the '001 Patent. Defendants' infringement is willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

85. ART has no adequate remedy at law for the harm caused by Defendants' acts.

86. ART has suffered monetary damages in an amount to be proven at trial.

87. ART is entitled to an accounting by Defendants of funds comprising all revenues received through the commercial exploitation of its infringing technology, the imposition of a constructive trust for the benefit of ART for all such funds in the custody or control of Defendants, the assessment of a reasonable royalty for Defendants' use of ART's invention, and to all other damages to which ART may be entitled.

### COUNT TWO: INFRINGEMENT OF THE '840 PATENT

88. ART incorporates by reference the previous allegations in the complaint.

89. The '840 Patent is valid and enforceable.

90. The '840 Patent has been validly assigned to ART.

91. Defendants have, without authority, consent, right, or license, and in direct infringement of the '840 Patent, made, used, offered for sale, and/or sold apparatus protected by the '840 Patent.

92. Defendants have actual notice of the '840 Patent. This notice was provided on each and every of Defendants products that embody the patented invention. Despite having notice of the Patent, Defendants continue to infringe the '840 Patent. Defendants' infringement is willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

93. ART has no adequate remedy at law for the harm caused by Defendants' acts.

94. ART has suffered monetary damages in an amount to be proven at trial.

95. ART is entitled to an accounting by Defendants of funds comprising all revenues received through the commercial exploitation of its infringing technology, the imposition of a constructive trust for the benefit of ART for all such funds in the custody or control of Defendants, the assessment of a reasonable royalty for Defendants' use of ART's invention, and to all other damages to which ART may be entitled.

### **COUNT THREE: INFRINGEMENT OF THE '442 PATENT**

96. ART incorporates by reference the previous allegations in the complaint.

97. The '442 Patent is valid and enforceable.

98. The '442 Patent has been validly assigned to ART.

99. Defendants have, without authority, consent, right, or license, and in direct infringement of the '442 Patent, made, used, offered for sale, and/or sold apparatus protected by the '442 Patent.

100. Defendants have actual notice of the '442 Patent. This notice was provided on each and every of Defendants products that embody the patented invention. Despite having notice of the Patent, Defendants continue to infringe the '442 Patent. Defendants'

infringement is willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

101. ART has no adequate remedy at law for the harm caused by Defendants' acts.

102. ART has suffered monetary damages in an amount to be proven at trial.

103. ART is entitled to an accounting by Defendants of funds comprising all revenues received through the commercial exploitation of its infringing technology, the imposition of a constructive trust for the benefit of ART for all such funds in the custody or control of Defendants, the assessment of a reasonable royalty for Defendants' use of ART's invention, and to all other damages to which ART may be entitled.

### COUNT FOUR: INFRINGEMENT OF THE '103 PATENT

104. ART incorporates by reference the previous allegations in the complaint.

105. The '840 Patent is valid and enforceable.

106. The '840 Patent has been validly assigned to ART.

107. Defendants have, without authority, consent, right, or license, and in direct infringement of the '840 Patent, made, used, offered for sale, and/or sold apparatus protected by the '840 Patent.

108. Defendants have actual notice of the '840 Patent. This notice was provided on each and every of Defendants products that embody the patented invention. Despite having notice of the Patent, Defendants continue to infringe the '840 Patent. Defendants' infringement is willful, intentional, unlawful and, upon information and belief, will continue unless enjoined by this Court.

109. ART has no adequate remedy at law for the harm caused by Defendants' acts.

110. ART has suffered monetary damages in an amount to be proven at trial.

111. ART is entitled to an accounting by Defendants of funds comprising all revenues received through the commercial exploitation of its infringing technology, the imposition of a constructive trust for the benefit of ART for all such funds in the custody or control of Defendants, the assessment of a reasonable royalty for Defendants' use of ART's invention, and to all other damages to which ART may be entitled.

## JURY DEMAND

ART requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, ART prays for relief and judgment against Defendants, as follows:

A. For a judicial determination and a declaration that the ART Patents are valid and enforceable;

B. For a preliminary and then permanent injunction issued against Defendants, their agents, officers, directors, employees, attorneys, successors, and assigns, all parent and subsidiary entities, and all those acting for or on the behalf of Defendants, or in active concert, participation, or combination with them, including customers and distributors, prohibiting Defendants from:

    i. Continuing acts of infringement of the ART Patents;

    ii. Otherwise infringing the ART Patents.

C. A judicial determination and a declaration that Defendants have infringed the ART Patents under 35 U.S.C. § 271, and final judgment incorporating the same;

D. That an Order issue from this Court requiring Defendants, their officers, agents, servants and employees, to deliver up to this Court for destruction all articles and materials infringing upon the ART Patents and all materials for reproducing such infringing products;

E. That Defendants be required to file with the Court within thirty (30) days after entry of an injunctive order or final judgment a written statement under oath setting forth the manner in which Defendants have complied with the order or final judgment;

F. Directing Defendants to account for, and awarding to ART, all gains and profits realized through, and damages caused by, Defendants' manufacture, production, distribution, circulation, sale, offering for sale, advertising, promotion or display of its products infringing upon the ART Patents, and Defendants' total profit realized thereby;

G. Awarding ART its damages sustained due to Defendants' infringement of the ART Patents;

H. In the alternative, that a reasonable royalty for Defendants' infringement be awarded to ART pursuant to 35 U.S.C. § 284;

I. That, due to Defendants' willful infringement, Defendants be ordered to pay ART treble damages and ART's reasonable attorneys' fees and experts' fees pursuant to 35 U.S.C. § 285;

J. An award of the costs of this action, including pre- and post-judgment interest, pursuant to 35 U.S.C. § 284; and

K. For such other and further relief as this Court deems necessary, just and proper under the circumstances.

DATED this 8th day of August, 2024.

KERCSMAR & O'HARA PLLC

By: */s/ Eric B. Hull*
Eric B. Hull
1149 N. Gower Street, Suite 216
Los Angeles, California 90038
*Attorneys for Plaintiff*