UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART RESEARCH AND TECHNOLOGY LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>GOOGLE, LLC, et al.,<br><br>  Defendants. | Case No. 24-cv-04898-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

In this patent case about media "clipping" and "stitching" technology, Defendants Google and YouTube move to dismiss Plaintiff ART Research and Technology LLC's ("ART") complaint in its entirety for failure to state a claim. Defendants' motion is fully briefed and because it was suitable for decision without oral argument, the Court vacated the hearing. *See* Dkt. No. 33. Having carefully considered the parties' papers and the arguments made therein, as well as the relevant legal authority, the Court hereby **GRANTS** Defendants' motion with leave to amend for the following reasons.

I.  **BACKGROUND**

ART was assigned a portfolio of four patents (together, "Asserted Patents" or "Patents"), Complaint ("Compl.") (Dkt. No. 1) ¶¶ 16-17, 19-27, through which ART sought to improve options for video sharing, Compl. ¶ 29.[1] Previously, users who wanted to create and share clips of existing videos would create each clip as a new Playable Media File, burdening storage and network resources. *Id.* Relatedly, users who wanted to "stitch" clips into a single composite video

---

[1] As it must, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

would still have to separate each clip into its own file to be combined. *Id.* ART's patent portfolio provided the ability to create short-form videos on social media platforms via clipping features that can host short-form videos virtually, without taking up valuable gigabytes of storage space separate and apart from the original video and stitching features, which involve combining multiple virtual clips together. Compl. ¶ 30. The patent portfolio includes the following patents.

U.S. Patent No. 9,451,001 (" '001 Patent"), titled "Social Networking with Video Annotation," was issued on September 20, 2016. Compl. ¶ 21. Claim 1 recites as follows:

> 1. A method to annotate Playable Media Files in a social network having a plurality of members, comprising:
>
> receiving by a member of said social network a Playable Media File;
>
> creating by said member of said social network an annotation relating to said Playable Media File;
>
> providing said annotation by said member of said social network to a network server;
>
> providing a data profile by said member of said social network to said network server, wherein said data profile comprises a location in said Playable Media File where said annotation should be embedded;
>
> embedding by said network server said annotation in the Playable Media File at said location;
>
> determining by said network server if said annotation is a first annotation submitted for said Playable Media File;
>
> if said annotation is not a first annotation submitted for said Playable Media File, encoding said data profile in a previously created table of contents for said Playable Media File;
>
> if said annotation is a first annotation submitted for said Playable Media File:
>
> creating a table of contents by said network server for said Playable Media File;
>
> encoding by said network server said data profile in said table of contents;
>
> wherein said Playable Media File is selected from the group consisting of an audio file, a video file, an audiovisual file, slide show, AVI file, MP3 file, MP4 file, WMA file, WAV file, Flash, MPEG file.

U.S. Patent No. 10,084,840 (" '840 Patent"), titled "Social Networking with Video Annotation," was filed as a continuation-in-part of the '001 patent, and was issued on September 25, 2018.  Compl. ¶ 23.  Claim 1 of the '840 Patent recites as follows:

> 1. A method to create and save an annotation associated with a Playable Media File, comprising:
>
> receiving a Playable Media File;
>
> creating an annotation relating to said Playable Media File;
>
> providing said annotation to a network server;
>
> providing a data profile to said network server, wherein said data profile comprises a location in said Playable Media File where said annotation should be made visible;
>
> determining by said network server if said annotation is a first annotation submitted for said Playable Media File;
>
> if said annotation is not a first annotation submitted for said Playable Media file, encoding said data profile in a previously-created table of contents for said Playable Media File;
>
> if said annotation is a first annotation submitted for said Playable Media File:
>
> creating a table of contents by said network server for said Playable Media file; and
>
> encoding by said network server said data profile in said table of contents;
>
> wherein said Playable Media File is selected from the group consisting of an audio file, a video file, an audiovisual file, slide show, AVI file, MP3 file, MP4 file, WMA file, WAV file, Flash, and MPEG file.

U.S. Patent No. 10,609,442 (" '442 Patent"), titled "Method and Apparatus for Generating and Annotating Virtual Clips Associated with Playable Media File," was issued on March 31, 2020.  Compl. ¶ 25.  Claim 1 of the '442 Patent recites as follows:

> 1. A method for displaying information associated with a Playable Media File, comprising:
>
> obtaining stored data describing the information, the stored data comprising a storage location of the playable media file and a plurality of virtual clips each associated with the playable media file and including a first data element identifying a first time within the playable media file at which a corresponding virtual clip begins, and a second data element identifying a first user profile associated with

        creating the corresponding virtual clip;

        accessing the playable media file at the storage location;

        causing a graphical user interface (GUI) to be displayed on a computing device of a user, wherein said GUI enables the user to generate user inputs by interacting with the GUI, and the GUI comprises:

        a display window for displaying content encoded by the playable media file;

        a first interactable graphical object, wherein the first interactable graphical object overlays a first portion of the display window and displays a timeline representing a duration of the playable media file and a plurality of clip indicators each associated with a corresponding virtual clip of the plurality of virtual clips, each clip indicator appearing on the timeline at a display position corresponding to the first time identified by the first data element of the corresponding virtual clip; and

        a second interactable graphical object, wherein the second interactable graphical object overlays a second portion of the display window, is configured to display up to a first number of graphic elements each associated with a corresponding virtual clip of the plurality of virtual clips, and is initially not displayed in the GUI;

        receiving a first user input indicating a first interaction of the user with a first display position on the timeline;

        determining a selected time within the playable media file that corresponds to the first display position;

        identifying, as a plurality of displayable virtual clips:

        a first virtual clip of the plurality of virtual clips, the corresponding first time of the first virtual clip being the closest, of the plurality of virtual clips, to the selected time; and

        one or more of the virtual clips wherein the corresponding first time precedes and is approximate to the first time of the first virtual clip, and one or more of the virtual clips wherein the corresponding first time is subsequent and approximate to the first time of the first virtual clip, such that at most the first number of the plurality of virtual clips are selected as the plurality of displayable virtual clips; and

        updating the user interface on the computing device to display a list of the plurality of displayable virtual clips in the second interactable graphical object.

U.S. Patent No. 10,681,103 (" '103 Patent"), titled "Social Networking with Video Annotation," was filed as a divisional of the '840 Patent, and was issued on June 9, 2020. Compl. ¶ 27. Claim 1 of the '103 Patent recites as follows:

4

> 1. A method to make a composite virtual clip, comprising:
> selecting (N) saved virtual clips and an order of presentation for each virtual clip;
>
> initially setting (M)=1;
>
> > configuring a (M)th pointer to indicate a storage location for a (M)th saved virtual clip, wherein a (M)th virtual clip comprises a (M)th content from one or more designated sources and (M) is greater than or equal to 1 and less than or equal to (N);
>
> saving said (M)th pointer;
>
> determining if (M) equals (N);
>
> when (M) is less than (N), setting (M) equal to (M)+1; and
>
> repeating said configuring, saving, and determining until (M) equals (N).

In October 2006, Google purchased YouTube. Compl. ¶ 45. YouTube generates a significant amount of advertisement revenue through normally-uploaded videos as well as through its "Clips" and "Shorts" features. Compl. ¶ 47. "Clips" are short portions (five to 60 seconds) of a long-form YouTube video. Compl. ¶ 49. "Shorts" are short-form videos created by content creators. Compl. ¶ 48. Across platforms, short-form videos are the most popular and engaging type of social media. Compl. ¶ 50. ART alleges Defendants' Shorts and Clips products infringe and induce infringement of the Asserted Patents. Compl. ¶ 54. ART alleges Defendants were fully aware of ART's Patent Portfolio prior to offering the Clips and Shorts features. Compl. ¶ 75. ART alleges Defendants had constructive notice of ART's patented technologies, and Google also had actual formal notice of its infringement from letters ART sent on January 4, 2023 and August 22, 2023. Compl. ¶ 78.

On August 8, 2024, ART filed its complaint, asserting patent infringement claims as to each of the Asserted Patents. Compl. ¶¶ 80-111. On October 4, 2024, Defendants filed a motion to dismiss. Dkt. No. 22. On October 14, 2024, the parties stipulated to extend their briefing schedule, Dkt. No. 25, which the Court granted, Dkt. No. 26. On November 22, 2024, Plaintiff filed its opposition to Defendants' motion to dismiss, Dkt. No. 28, and Defendants' reply followed on December 19, 2024, Dkt. No. 29.

## II. DISCUSSION

Defendants move to dismiss ART's complaint on the basis that ART's Patents all claim ineligible subject matter under 35 U.S.C. § 101 and ART failed to plausibly plead willful infringement. A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007).

"When considering a motion to dismiss," courts "accept 'as true all well-pleaded allegations of fact in the complaint' and construe them in the light most favorable to the non-moving party." *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (citation omitted). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted). As a general matter, the court should limit its Rule 12(b)(6) analysis to the contents of the complaint, although it "can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may also consider matters that are properly the subject of judicial notice, *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001), exhibits attached to the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims, *No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

### A. Eligibility for Patenting

Defendants argue that none of the Asserted Patents are eligible for patenting under the Patent Act. Under Section 101 of the Patent Act, which "defines the subject matter that may be patented," *Bilski v. Kappos*, 561 U.S. 593, 601 (2010), "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor," 35 U.S.C. § 101. "These categories are broad, but they are not limitless." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1136 (N.D. Cal. 2017). The Supreme Court "has long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These three categories of subject matter are excepted from patent eligibility because "they are the basic tools of scientific and technological work," which are "free to all . . . and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (citations omitted). The Supreme Court explained that allowing patent claims for such purported inventions would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.*

However, the Supreme Court also cautioned that "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217 (alteration, internal quotation marks, and citation omitted). Accordingly, courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.* Thus, "in applying the § 101 exception, [courts] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention." *Id.* To make this distinction, courts engage in an analysis as set forth in *Alice*, the leading case patent-eligible subject matter under Section 101, which proceeds in two steps:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements

7

> "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an " 'inventive concept' " – i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.

*Id.* at 217-18 (alterations in original) (citations omitted); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (describing "the now familiar two-part test described by the Supreme Court in *Alice*"). The Court considers each of the *Alice* steps in turn.

### 1. *Alice* Step One

There is no bright-line test to distinguish abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework. *See Alice*, 573 U.S. at 221 (noting that the Court "need not labor to delimit the precise contours of the 'abstract ideas' category in this case"); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (same). Consequently, in evaluating whether particular claims are directed to patent-ineligible abstract ideas, courts generally begin by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The court's task is thus not to determine whether claims merely involve an abstract idea at some level, *see id.*, but rather to examine the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter," *Internet Patents Corp. v. Active Network*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). That a claim is directed to "mental processes that 'can be performed in the human mind' or 'using a pencil and paper' " is a sign of abstraction. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021). Relatedly, a "claimed method's similarity to 'fundamental . . . practices long prevalent' is yet another clue that the claims may be abstract and unpatentable." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (alteration in original). "[T]he *claim itself* must 'sufficiently capture the inventors' asserted technical contribution to the prior art by reciting *how* the solution specifically improves the function of prior art.' " *Bot M8 LLC v. Sony Corp. of Am.*, 465 F.Supp.3d 1013, 1020 (N.D. Cal. 2020) (emphasis in original), *aff'd*, 4 F.4th 1342 (Fed. Cir. 2021) (citing *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150-51 (Fed. Cir. 2019)).

Courts do not need to individually analyze every claim under *Alice* when certain claims are "representative." *Twilio*, 249 F.Supp.3d at 1141 (citing *Alice*, 573 U.S. at 224). Here, Defendants focus their challenge on the first claim of each of the Asserted Patents, arguing they are representative. *See* Mot. 8, 20, 25, 29. Because ART only discusses the first claim of each patent in its complaint, and because it does not dispute Defendants' position, the Court considers the first claim of each patent to be representative. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (claims may be treated as "representative" if a patentee makes no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim").

The Court finds that the representative claims are directed to a patent-ineligible abstract idea. *Alice*, 573 U.S. at 217. Specifically, they recite "generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components . . . ." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024) (collecting cases). Claim 1 of the '103 Patent recites "[a] method to make a composite virtual clip" by selecting clips, ordering them, and saving them. *TLI*, 823 F.3d at 611-14 (finding ineligible claims recited abstract idea of "classifying and storing digital images"). Claim 1 of the '442 Patent recites "[a] method for displaying information associated with a Playable Media File" by "obtaining stored data," "accessing playable media file[s]," "causing a graphical user interface to be displayed on a computing device," "receiving user input," "determining a selected time," "identifying virtual clips," and "updating the user interface" to display virtual clips. The '001 and '840 Patents are directed to the abstract idea of annotating media; the difference between them is that for the '001 Patent, the annotation occurs within a social network. The '103 Patent recites "[a] method to make a composite virtual clip" by "selecting . . . saved virtual clips," "configuring a . . . pointer to indicate a storage location," "saving said . . . pointer," and "repeating." These claims all consist of "result-orientated, functional language" that make them ineligible for patenting under step one. *Mobile Acuity*, 110 F.4th at 1293.

ART does not contest this in its opposition, instead arguing that the Asserted Patents improve computer functionality. But its purported advantages are not recited in the claims, and

1   "[t]he analysis at step one 'must focus on' the claim language." *Hawk Tech. Sys., LLC v. Castle*

2   *Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) (quoting *ChargePoint, Inc. v. SemaConnect,*

3   *Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019)). ART contends its '103 Patent "improves computer

4   functionality over prior video platform approaches because it stitches and blends virtual clips

5   based on annotations of a Playable Media File into a composite virtual clip." Dkt. No. 28

6   ("Opp.") at 9 (citing Compl. ¶ 40). However, Claim 1 of the '103 Patent does not recite

7   "blending," does not require "video" (rather, "virtual clips"), and does not require that this process

8   be "based on annotations of a Playable Media File." Similarly, ART contends the '442 Patent

9   "improves computer functionality over prior video platform approaches because it allows a large

10  number of users to interact with a visible annotation indicator to display a list of graphical

11  elements (e.g., annotations) of an existing Playable Media File." Again, the claim does not recite

12  video, nor does it recite a large number of users. This proves fatal for ART. *FullView, Inc. v.*

13  *Polycom, Inc.*, No. 18-CV-00510-EMC, 2021 WL 1668017, at *7 (N.D. Cal. Apr. 28, 2021) ("[I]t

14  is well-settled law that courts are to focus only on the claims when conducting a § 101 analysis.").

15       Even if these purported advantages were recited in the representative claims, they do not

16  assert "an improvement in computers as tools," but rather an "independent abstract idea that use

17  computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

18  The process of making composite clips is a process that can be, and often has been, done by hand.

19  Indeed, humans make and organize excerpts of media into ordered lists in a variety of contexts,

20  such as how a film editor splices together film reel frames to create a sequence. So too have

21  humans annotated by hand separate from the media itself. Defendants offer the examples of

22  transparency sheets on overhead projectors, closed captions on TV broadcasts, and transparent

23  map overlays at issue in *IBM*, 50 F.4th at 1380 (finding a computerized map annotation method

24  could in theory be done by hand), all of which are processes of annotating media that avoid the

25  need to create a separate version of the media for each annotation. As such, the claims therefore

26  recite "an abstract idea for which computers are invoked merely as a tool." *See, e.g.*, *TLI*

27  *Commc'ns*, 823 F.3d at 611 (finding claims related to products and services that allowed users to

28  upload digital photos from a mobile device were directed to "the abstract idea of classifying and

storing digital images in an organized manner"); *Hawk Tech.*, 60 F.4th at 1356 (finding a patent related to a method of viewing multiple simultaneously displayed and stored video images on a remote viewing device of a video surveillance system was directed to the abstract idea of "storing and displaying video"). ART calls these "ill-fitting analogies" because the patents' technology "is only possible on the computer." Opp. at 18-19. But courts routinely find patented processes ineligible under step one of *Alice* where the processes done on the computer can also be done by humans engaging in a similar process, even if not precisely in the same way as computers. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364-65 (Fed. Cir. 2023) (finding claims directed to abstract ideas even where a human could not complete the process at the same speed or scope as the computer, and collecting cases).

ART also argues that its Patents "improv[e] storage and network resources for the functionality of a computer." Opp. at 18-19. This does not amount to a "specific, technological solution to a technological problem," *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024), but rather an improvement in a user's experience. "[T]he Federal Circuit has 'held that improving a user's experience' remains, 'without more,' an insufficient technological improvement and, thus, not patentable." *Bot M8*, 465 F.Supp.3d. at 1021 (citing *Customedia Techs., LLC v. Dish Net. Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020)). Unlike the patent in *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1260 (Fed. Cir. 2017), which recites a way of overcoming the deficiencies in a three-tiered computer memory hierarchy to enhance performance that the court found was directed to an improved computer memory system, the Patents here recite no change in how the computer operates; rather, the storage-saving benefit is the inherent result of the Patents' processes.

Accordingly, the Court finds the Patents are directed to abstract ideas, and its analysis turns to the second *Alice* step.

### 2. *Alice* Step Two

A claim drawn to an abstract idea is not necessarily invalid if the claim's limitations – considered individually or as an ordered combination – serve to "transform the claims into a patent-eligible application." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,

776 F.3d 1343, 1348 (Fed. Cir. 2014). The second step of the *Alice* analysis is a search for an "inventive concept," through which courts examine whether the claim contains an element or combination of elements that "ensure[s] that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 218 (citation omitted). "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" where those components simply perform their "well-understood, routine, conventional" functions. *TLI Commc'ns LLC*, 823 F.3d at 613; *see also id.* (ruling that "telephone unit," "server," "image analysis unit," and "control unit" limitations were insufficient to satisfy *Alice* step two where claims were drawn to abstract idea of classifying and storing digital images in an organized manner). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368. This inquiry "goes beyond what was simply known in the prior art." *Id.* at 1369.

      Here, ART fails to articulate an inventive concept in any of its Patents that transforms the abstract ideas into a patent-eligible application of the abstract idea. ART alleges that the "techniques and technology" of its Patents "were not conventional and not well-understood." Compl. ¶ 42. However, the complaint lacks supporting factual allegations sufficient to defeat the motion to dismiss, instead using "functional language, at a high level of generality" in reference to "generic computer components." *IBM*, 50 F.4th at 1379. ART acknowledges that the processes relevant to its patents existed previously, *see* Compl. ¶ 29 (noting existing video sharing procedures were "lacking in important ways"), but there is no inventive concept sufficient to survive *Alice* step two where the "improved efficiency" of an existing process is attained "not from an improvement in the computer but from applying the claimed abstract idea" on a computer. *IBM*, 50 F.4th at 1379. In its opposition, ART largely repeats its arguments as to step one – that the Patents improve computer functionality over prior video platform approaches. Opp. at 21-22. ART contends that the specific ordered combination of elements in the claims "turns the claims . . . into a particular practical application" of the abstract idea, Opp. at 23 (citing *Bascom*, 827 F.3d

at 1352), i.e., "creat[ing] a new process allowing multiple users to virtually clip and stitch within the original video file without creating new files that burden storage and network resources." *Id.* "[T]he district court need not accept a patent owner's conclusory allegations of inventiveness," *IBM*, 50 F.4th at 1379, and ART has failed to advance any nonconclusory allegations of inventiveness.

The two-step *Alice* test shows that Claim 1 of each Asserted Patent fail as ineligible under 35 U.S.C. § 101, and, because they are representative, so do the remaining claims.[2]

### B. Claim Construction

ART argues that dismissal prior to claim construction is improper. Opp. at 23. However, to delay determining eligibility until after claim construction, "the patentee must propose a specific claim construction . . . and explain why those circumstances must be resolved before the scope of the claims that can be understood for Section 101 purposes." *Trinity*, 72 F.4th at 1360-61. As ART has not done this, the Court declines to hold a claim construction hearing and defer its decision on the instant motion.

### C. Leave to Amend

ART contends that it should be granted leave to amend. Opp. at 25-26. Defendants object, arguing ART has failed to identify any way it could improve its pleadings, so amendment would be futile. Reply at 19-20. Leave should be freely given, and courts in this District have granted leave to amend even where it appeared unlikely that the plaintiff would be able to establish patent eligibility. *See, e.g.*, *RingCentral, Inc. v. Dialpad, Inc.*, 372 F.Supp.3d 988, 1005 (N.D. Cal. 2019) ("Although the Court doubts whether the identified deficiencies can be cured by amendment, the Court will nonetheless grant leave to amend solely to allow RingCentral an opportunity to attempt to plead patent eligibility.") (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)); *Yu v. Apple*, 392 F. Supp. 3d 1096, 1008 (N.D. Cal. 2019) ("In light of the plain language of the claims in the patent, the Court has substantial doubt that Yu can amend around this problem. Even so, the Court cannot say that any amendment would necessarily

---

[2] The Court therefore need not reach the parties' arguments regarding whether ART plausibly pleads willful infringement. *See* Mot. at 30-31; Opp. at 24; Reply at 18-19.

be futile, and so plaintiffs may file amended complaints . . . ."). Although *Alice* step one focuses on analyzing the patents' claims, *Alice* step two requires assessment of facts. ART maintains that its complaint is sufficiently pleaded, but requests leave to amend to cure any deficiencies the Court identifies. Because the Court cannot conclude ART would be unable to allege new facts sufficient to state a claim, it will allow ART to amend its complaint. In preparing any amended complaint, ART is reminded that the Court must determine the eligibility of each patent individually, not the patent family as a whole.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED**. ART's complaint is dismissed with leave to amend. Any amended complaint is due October 27, 2025. No parties or claims may be added absent stipulation of the parties or leave of Court.

**IT IS SO ORDERED.**

Dated: September 29, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

14